UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use of POONG LIM/PERT JOINT VENTURE, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:03-cv-290-JWS |
| vs. | ) ) ) | ORDER FROM CHAMBERS |
| DICK PACIFIC/GHEMM JOINT VENTURE; CONTINENTAL CASUALTY CO.; NATIONAL FIRE INSURANCE CO. OF HARTFORD; SEABOARD SURETY CO.; and ST. PAUL FIRE AND MARINE INSURANCE CO., | ) ) ) ) ) ) ) ) ) | [Re: Motions at Dockets 157,158] |
| Defendants. | ) ) | |

## I. MOTIONS PRESENTED

At dockets 157 and 158, Dick Pacific/Ghemm Joint Venture ("DPG") moves for summary judgment on claims by Poong Lim/Pert Joint Venture ("Poong Lim") based on past and future payments to its subcontractors. The motions have been fully briefed, and oral argument was heard on both motions on February 24, 2006.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56© provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[1] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[2] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[3] The court must not assess the credibility of this evidence, and must draw all justifiable inferences from it in favor of the nonmoving party.[4]

## III. DISCUSSION

DPG's motions challenge two claims by Poong Lim. The motion at docket 157 addresses Poong Lim's claim for damages suffered by Sejin, one of its subcontractors, due to work Sejin performed that was additional to what was called for under Poong Lim's contract with Sejin. DPG contends there is not evidence of an agreement between Poong Lim and Sejin rendering Poong Lim liable to Sejin for those damages. Based on that contention, DPG argues that Poong Lim may not bring a claim against DPG based on Sejin's damages. In response, Poong Lim insists there is evidence of an

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[2] *Id.* at 325.

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[4] *Id.* at 255.

-2-

agreement rendering it liable to Sejin for Sejin's damages and, therefore, that it may bring a claim against DPG for those damages.

DPG's motion at docket 158 focuses on Poong Lim's claim for payments it made to subcontractors, not including Sejin, due to work those subcontractors performed that was additional to what was called for under their contracts with Poong Lim. DPG argues there is not evidence that Poong Lim made any of those payments. Poong Lim begs to differ.

**A. DPG's Motion at Docket 157 Will Be Granted Because Alaska Law Does Not Recognize Poong Lim's Claim**

Alaska law controls whether Poong Lim may bring a claim against DPG based on damages suffered by its subcontractor, Sejin, because it is the law that applies to the contract between Poong Lim and DPG.[5] The court's duty is "to ascertain and apply the existing [Alaska] law, [and] not to predict that [Alaska] may change its law and then to apply [this court's] notion of what that change might or ought to be."[6] The parties have uncovered only one case, *University of Alaska v. Modern Construction, Inc.*,[7] that addresses the question at hand. The court's research has not been more fruitful.

The dispute in *Modern* arose from a contract between Modern Construction, Inc., and the University of Alaska, under which Modern agreed to build an activity center.[8] After the "contract work was completed, accepted and paid for, Modern presented the

---

[5] Doc. 1, ex. 1, p. 12, Clause XVII.

[6] *Cabrera v. City of Huntington Park*, 159 F.3d 374, 378 (9th Cir. 1998) (quoting *Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 346 (9th Cir. 1974)).

[7] 522 P.2d 1132 (Alaska 1974).

[8] *Id.* at 1134.

-3-

University with ... claims for impact costs incurred due to delays attributable to the University and its architect during the course of construction."[9] The University rejected Modern's claims, and they proceeded to arbitration.[10] At arbitration, Modern presented six claims, including one "for additional costs incurred by [its] subcontractors due to the delays, and for payment of which [it] claimed to be ultimately responsible."[11] The arbitrators awarded Modern a lump sum that was not itemized by claim.[12]

The University appealed the award to Alaska superior court and then to the Alaska Supreme Court.[13] Before the supreme court, the University argued that "the [arbitration] panel exceeded its powers by awarding Modern an unknown amount in reliance upon the unverified claims of subcontractors."[14] The supreme court took "[t]he thrust of the University's argument [to be] that, [because] the record is silent as to how the panel arrived at the lump sum award, it is possible that the award was based in part upon unverified subcontractor claims [and therefore] must be presumed invalid."[15]

Having taken stock of the University's argument, the supreme court rejected it, for two reasons. First, the court decided that the arbitrators' award should be presumed

---

[9]*Id.* at 1135.

[10]*Id.*

[11]*Id.*

[12]*Id.* at 1135-36.

[13]*Id.* at 1136.

[14]*Id.* at 1139.

[15]*Id.*

valid given that "nothing in the record [rebutted] th[at] presumption."[16] The second reason was that even if the presumption were rebutted and the court were to examine the award's validity, the arbitrators would not have committed "reversible error" by basing their award in part on the subcontractors' claims.[17] The court "note[d] a substantial line of authority" holding that prime contractors could bring claims against owners of construction projects on behalf of their subcontractors where their subcontractors had released the prime from liability in excess of the amount recovered from the owners.[18] The court cautioned, however, that it was not deciding whether a subcontractor's claim could be considered part of a prime contractor's own damages.[19]

The *Modern* court's discussion on the second point is fatal to Poong Lim's claim. The court entertained the proposition that a contractor could recover damages suffered by its subcontractor for which it remained liable, but only if it recovered those damages on behalf of its subcontractor. The court declined to approve a contractor recovering those damages as its own. Poong Lim's complaint and briefing make clear it is seeking to recover the damages of its subcontractor, Sejin, not on Sejin's behalf but on its own behalf. To date, such a claim has not been recognized under Alaska law.

---

[16] *Id.* (citation omitted).

[17] *Id.* at 1139-40 n.27.

[18] *Id.* at 1139 n.27 (citations omitted).

[19] *Id.* at 1140 n.27.

-5-

Case 3:03-cv-00290-JWS   Document 261   Filed 03/02/06   Page 5 of 7

**B. DPG's Motion at Docket 158 Will Be Denied Because There Is a Genuine Issue About Whether Poong Lim Has Made a Single Payment on Its Subcontractors' Additional Work**

In its motion at docket 158, DPG argues that "Poong Lim has suffered no actual damages for any of the work performed by its subcontractors."[20] The parties' representations at oral argument indicate that they understand the "actual damages" in question to be payments by Poong Lim to its subcontractors, other than Sejin, for work additional to what was called for under its contracts with them. When read in light of that understanding, DPG's argument is that "Poong Lim has made no payments for any of the additional work performed by its subcontractors."

The evidentiary burden that this argument puts on Poong Lim is light. It must offer evidence creating a genuine issue about whether it made a *single* payment toward *any* of the additional work performed by its subcontractors. DPG could have saddled Poong Lim with a much heavier burden if it had argued, "Poong Lim has not paid *all* its subcontractors for *all* the additional work they performed."

To meet its burden, Poong Lim has offered the deposition testimony of H.Y. Lee, "[Poong Lim's] manager in charge of contractual issues with regard to [its] subcontractors,"[21] and Jordan Rosenfeld, "Poong Lim's accounting expert."[22] Lee testified that:

> [W]hile the subcontractors were involved in the fabrication work, there might be some additional work or modification cost occurring

---

[20] Doc. 158, p. 5.

[21] *Id.*, ex. 3, deposition of H.Y. Lee, March 31, 2005, at 6:18-19.

[22] Doc. 183, p. 4.

-6-

Case 3:03-cv-00290-JWS   Document 261   Filed 03/02/06   Page 6 of 7

> or some contingent work occurred. So in this case the
> subcontractors will invoice their payment to Poong Lim through
> Poong Lim's production team. So in this case [I] reviewed the
> invoices, and if [I] can agree with the invoiced information, then [I]
> executed the change orders so that the subcontractors could
> receive the monthly payment.[23]

As for Rosenfeld, in response to the question, "[W]hat would be the basis for Poong Lim seeking damages for any of the work that was performed by [its] subcontractors?", he testified that "Poong Lim has already incurred the extra costs for [its] subcontract laborers to perform the additional work."[24]

Read in the light most favorable to Poong Lim, Lee and Rosenfeld's deposition testimony meets Poong Lim's burden. Lee's testimony that he "executed change orders" so that Poong Lim's subcontractors would "receive the monthly payment" for their "additional work" plainly suggests that Poong Lim made at least one payment on additional work by its subcontractors. The same is true of Rosenfeld's reference to "extra costs" that Poong Lim has "already incurred" due to "additional work" performed by its "subcontract laborers."

## IV. CONCLUSION

For the reasons set out above, the motion at docket 157 is **GRANTED**, and the motion at docket 158 is **DENIED**.

DATED at Anchorage, Alaska, this 2nd day of March, 2006.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[23] *Id.*, ex. 2, deposition of H.Y. Lee, March 31, 2005, at 17:2-12.

[24] *Id.*, ex. 4., deposition of Jordan Rosenfeld, May 31, 2005, at 68:10-15.